IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C&G FARMS, INC.,<br>GEORGE AMARAL RANCHES, INC.,<br><br>             Plaintiffs,<br><br>   vs.<br><br>CAPSTONE BUSINESS CREDIT, LLC,<br>et al,<br><br>             Defendants.<br>                                     / | CASE NO. CV F 09-0032 LJO SKO<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION**<br><br>(Doc. 109, 115) |

In this Perishable Agricultural Commodities Act ("PACA") and breach of contract action, cross motions for summary judgment have been filed. In the first motion, Plaintiff George Amaral Ranches, Inc. ("Amaral") seeks summary judgment or in the alternative summary adjudication pursuant to Fed.R.Civ.P. 56 for Breach of an Oral Contract and for Violation of the PACA trust. In the second motion, Defendants Capstone Business Credit, LLC, Capstone Capital Group I, LLC, and the Capstone Group, LLC (collectively "Capstone") move for partial summary judgment against C&G Farms and George Amaral Ranches on the grounds that the debt owed by the produce buyer, Lindsay Food International, was not subject to a PACA trust.

The oppositions were filed on February 3, 2011. The replies were filed on February 10, and 11, 2011. Pursuant to Local Rule 230(g), and agreement by the parties, this matter was submitted on the pleadings without oral argument, and the hearing set for February 17, 2011 was VACATED. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

# FACTUAL BACKGROUND

**A.    The Parties**

Plaintiff C&G Farms ("C&G") and plaintiff George Amaral Ranches, Inc. are family farms. Lindsay Food International ("Lindsay") was a frozen foods processing company engaged in the business of buying, processing and selling processed forms of produce. (Doc. 117, Undisputed facts 3.) Lindsay is now defunct and is without any assets. Defendant Capstone's various businesses were secured lenders of Lindsay and allegedly received PACA trust assets.

**B.    Plaintiff Amaral's Dealings with Lindsay**

Between October 20, 2007 and January 14, 2007, Amaral sold Lindsay thirty-two (32) shipments of broccoli and cauliflower in the aggregate invoiced amount of $235,520.14.

Amaral alleges that beginning in March 2007, Capstone loaned Lindsay millions of dollars and took security interest in Lindsay's real property, equipment and accounts receivables. Amaral alleges an agent of Capstone met with a representative of Amaral and orally agreed to pay for and guaranteed payment for, all produce supplied by Amaral to Lindsay. In reliance on these promises, Amaral Ranches agreed and sold to Lindsay 32 shipments of broccoli and cauliflower between October 2007 and January 2008. Amaral was never paid by either Lindsay or Capstone.

When Lindsay went defunct in January 2008, Capstone acquired all of Lindsay's assets through foreclosure. Capstone did not pay the proceeds from Lindsay's accounts receivables to Amaral.

Amaral moves for summary judgment on two claims: Count VI for breach of contract and Count VII for PACA enforcement, seeking disgorgement by Capstone of $235,520.14. Amaral alleges that upon Lindsay's acceptance of the produce, Amaral became a PACA trust beneficiary. Amaral alleges that as a PACA beneficiary, Amaral had a super priority claim to Lindsay's assets over all of Lindsay's non-PACA creditors. Amaral moves for summary adjudication pursuant to Rule 56, on the following grounds:

    1    There is no issue of fact that Capstone breached an oral contract wherein Capstone agreed to pay and guaranteed to pay for all produce supplied by Amaral to Lindsay.

    2.    There is no issue of fact that:

        A.    Amaral is a valid PACA creditor of Lindsay in the amount of $235,520.14;

B. Capstone received payment from Lindsay's assets;

C. Lindsay breached the PACA trust by transferring its assets to Capstone pursuant to secured lending agreements;

D. Capstone cannot show that the assets Capstone received from Lindsay are non PACA assets.

**C. Lindsay/Capstone's Dealings with C&G Farms**

In its motion, Capstone seeks partial summary judgment against C&G and Amaral on the PACA claims.[1] Capstone seeks an order that a total debt of approximately $538,000 allegedly owed by Lindsay to C&G was not subject to a trust under PACA, or in the alternative, that Capstone cannot be liable for the debt if a PACA trust is established.

Capstone's motion involves agricultural products from C&G for 2005/2006 spinach crop, 2007 turnip greens crop, and 2007 broccoli stems crop.[2] Between June 2006 and December 2007, C&G sold more than one million dollars of perishable commodities to Lindsay pursuant to a written and oral contract. (Second Amended Complaint ¶9.)

Capstone contends that the spinach was not delivered to Lindsay. C&G cut the first growth of the spinach crop in April 2006 and dumped it as cattle feed. C&G cut the second growth of the spinach crop in May 2006. Lindsay informed C&G that it was not in a financial position to pay for the spinach. C&G plowed the spinach under and did not harvest the remainder. It is undisputed that the spinach was never physically delivered to Lindsay Foods. C&G invoiced Lindsay for the spinach, and Lindsay did not pay for the produce.

For the turnips, Lindsay and C&G agreed that C&G would produce turnip greens for Lindsay's mid-year production. Lindsay initially took the first cut of the turnip greens. Later, Lindsay informed C&G that it was not in a financial position to pay for the remainder of the turnip greens crop. It is

---

[1] For purposes of Capstone's motion against C&G and Amaral, Capstone refers to both plaintiffs collectively as "C&G." For ease of reference in discussing Capstone's motion against plaintiffs, the Court will adopt this nomenclature.

[2] C&G argues that Capstone's motion is only a portion of C&G's PACA claim. The transactions for the rejected spinach, the turnips and broccoli are the challenged transactions. However, C&G notes that it is still owed an outstanding balance of $197,222.69 for 57 loads of produce sold between May 25, 2007 and December 18, 2007. (Doc. 132, Opposition p.1-2.) As other transactions between the parties are not before the Court, the Court does not rule upon them.

undisputed that the remainder of the turnip crop was never physically delivered to Lindsay Foods.

Lindsay likewise cancelled the order of broccoli stems that Lindsay had request from C&G. It is undisputed that the broccoli stems were never physically delivered to Lindsay Foods.

## ANALYSIS AND DISCUSSION

### A.   Summary Judgment/Adjudication Standards

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970). The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of

persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

**B.    Breach of Oral Contract**

Amaral's sixth cause of action against Capstone is for breach of contract. Amaral argues that Capstone breached an oral contract to pay for broccoli and cauliflower. The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom. *Abdelhamid v. Fire Ins. Exchange*, 182 Cal.App.4th 990, 106 Cal.Rptr.3d 26 (2010).

**1.    Amaral's Arguments of the Contract**

Amaral presents evidence of two kinds of oral contracts. First, Amaral presents evidence that a representative of Capstone agreed to pay for all produce delivered by Amaral in consideration for Amaral's promise to grow and deliver broccoli and cauliflower to Lindsay. (Doc. 117, Plaintiffs Facts 6, 7.) In a February 2007 meeting between Amaral, Lindsay and Capstone, the repreresentative of Capstone agreed that Capstone would pay for all produce delivered by Amaral in consideration for

Amaral's promise to grow and deliver broccoli and cauliflower to Lindsay. (Doc. 116, Motion p.7-8.) Second, Amaral presents evidence that another representative of Capstone orally guaranteed that Capstone would pay Amaral for all produce sold to Lindsay. (Doc. 117, Plaintiffs Facts 8.) Amaral argues that in March 2007, the Capstone representative guaranteed payment for all produce delivered to Lindsay. Amaral argues that it fully performed on the oral contract by delivering produce to Lindsay. Amaral presents evidence that it supplied Lindsay with broccoli and cauliflower shipments from October 20, 2007 to January 14, 2007. Amaral argues that Capstone breached the contact because Capstone has not paid Amaral in the amount of $235,520.14 plus interest.

### 2. Lack of Authority to Bind Capstone to a Contract

Capstone argues that the evidentiary support of an "oral" contract with Capstone is inadmissible. Capstone points out that the sole evidentiary support for the alleged oral contract is provided in the declaration of Carlos Amaral. He does not identify the terms of the contract or the person with whom he entered into the contract from Capstone. Carlos testifies in his declaration that he met with a person named "John" from Capstone, who said that he was a representative of Capstone. (Doc. Decl. Carlos Amaral.)

Capstone presents evidence that the only "John" is John Petrera who is an independent consultant. (Doc. 139, Ingrassia Decl. ¶6.) Capstone presents evidence that "John" lacks authority to bind Capstone to a contract with Amaral. (Doc. 139, Ingrassia Decl. ¶7-8.) Capstone presents evidence that "John" is not an employee or manager of Capstone who possessed authority to bind Capstone to a contract. *Lindsay-Field v. Friendly*, 36 Cal.App.4th 1728, 1734 (1995).

No liability is incurred by the principle for acts of the agent beyond the scope of the agent's actual or ostensible authority, and a third party who deals with an agent and knows of the agency is under a duty to ascertain its scope. *Seneca Ins. Co. v. County of Orange*, 117 Cal.App.4th 611, 13 Cal.Rptr.3d 1 (2004). The question of whether an agent acted on behalf of a principal is a question of fact. *Id.*

Capstone has raised an issue of fact that "John" had authority to enter into and bind Capstone to a contract. Amaral has failed to show the extent of "John's" agency including binding Capstone to contracts and surety contracts. Capstone has raised an issue of fact as to the oral contract. Accordingly, summary adjudication on the oral contract will be denied.

**C.     The Perishable Agricultural Commodity Act**

Amaral's motion against Capstone and Capstone's motion against C&G require resolution of parties' rights under PACA.

   **1.     Overview of PACA**

PACA was enacted in 1930 to "suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce" and "provides a code of fair play . . . and aid to [agricultural] traders in enforcing their contracts." 7 C.F.R. Part 46, Fed. Reg. 45735, 45737 (Nov. 20, 1984). Under PACA, commission merchants, dealers, and brokers hold produce and any receivables from the sale of produce in trust for the benefit of unpaid produce suppliers until full payment has been made to the supplier. 7 U.S.C. § 499e(c)(2).

Under section 499e(c), perishable agricultural commodities, inventories of food or other derivative products, and any receivables or proceeds from the sale of such commodities or products, are to be held in "a non-segregated floating trust" for the benefit of unpaid sellers. *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 136 (3rd Cir. 2000). By the express language of PACA, the trust applies to the receivables generated by the sale of commodities, just as it does to the commodities themselves. *Boulder Fruit Exp. & Heger Organic Farm Sales v. Transportation Factoring, Inc.* 251 F.3d 1268, 1270-1271 (9th Cir. 2001), *cert. denied*, 534 U.S. 1133 (2002). Because the buyer holds produce in trust for the seller until repayment is complete, when the buyer files for bankruptcy the produce or its proceeds do not become property of the estate. *In re Country Harvest Buffet Rests., Inc.*, 245 B.R. 650, 653 (9th Cir. BAP 2000).

> "[PACA] is designed to protect commodity producers against secured lenders. In the ordinary case, here is how it works: Farmer sells oranges on credit to Broker. Broker turns around and sells the oranges on credit to Supermarket, generating an account receivable from Supermarket. Broker then obtains a loan from Bank and grants Bank a security interest in the account receivable to secure the loan. Broker goes bankrupt. Under PACA, Broker is required to hold the receivable in trust for Farmer until Farmer was paid in full; use of the receivable as collateral was a breach of the trust. Therefore, Farmer's rights in the Supermarket receivable are superior to Bank's. In fact, as a trust asset, the Supermarket receivable is not even part of the bankruptcy estate."

*Boulder Fruit Exp.*, 251 F.3d at 1270-1271.

### 2. Requirements for a Valid PACA Trust Beneficiary

Here, Amaral claims it is a PACA trust beneficiary for the broccoli and cauliflower it sold to Lindsay. C&G claims that it is a PACA trust beneficiary for the spinach, turnips and broccoli stems.

A PACA claimant, such as Amaral and C&G, must establish the following three elements in order to become a valid PACA trust beneficiary: (1) the produce in question must be "perishable agricultural commodities"; (2) the commodities must have been received by a commission merchant, a dealer, or broker; and (3) the claimant must have provided written notice of its intent to preserve its rights under PACA within 30 days after payment became due. *Country Harvest Buffet*, 245 B.R. at 653. Failure to pay promptly is also a necessary element. *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 284 (9th Cir. 1997) (the complaint also alleged that the PACA duty was breached by failing to pay promptly for the produce).

### 3. The Motion by Amaral against Capstone under PACA

Amaral moves for summary judgment on its PACA claim against Capstone for failing to pay for the broccoli and cauliflower. Amaral argues that the PACA trust attaches to the interest held by Capstone. Amaral argues that a third party lender, such as Capstone, must disgorge to the PACA beneficiary trust assets received from the PACA debtor, such as Lindsay, where the lender has obtained the assets pursuant to a secured lending agreement. The PACA beneficiary has superior rights to that of the secured lender. Amaral argues that all of Lindsay's assets, including real property, equipment and receivables, even if acquired before Amaral sold the produce is subject to Amaral's PACA trust. Amaral argues that "even property acquired by the produce buyer, Lindsay, before the PACA claim sold goods is subject to the PACA claimant's trust claim." (Doc. 116, Moving papers p.11.)

#### (A) Question of Fact Regarding Delivery

Capstone argues that Amaral has failed to carry its burden showing that broccoli and cauliflower were delivered to Lindsay.

Amaral must show that "the commodities must have been received by a commission merchant, a dealer, or broker." *Country Harvest*, 245 B.R. at 653. To prove delivery of the produce to Lindsay, Amaral offers the declaration of Mike Amaral and exhibits attached thereto. Mike Amaral's declaration states in pertinent part, "Between October 20, 2007 and January 14, 2008, Amaral Ranches sold and

delivered to Lindsay 32 shipments of broccoli and cauliflower. We promptly invoiced Lindsay for each shipment at or about the date of each shipment." (Doc. 119, Mike Amaral Decl. ¶4.) He attaches invoices to his declaration. Mr. Mike Amaral is the accountant, bookkeeper and custodian of records for Amaral Ranches.

Capstone objects to this evidence for lack of foundation, personal knowledge, improper authentication and hearsay. Capstone argues that there is insufficient evidence that there was "delivery" of 32 shipments of the broccoli and cauliflower to Lindsay. The only evidence is the declaration by Mike Amaral who purports to authenticate documents of delivery, but he lacks personal knowledge. In addition, the documents themselves fail to show actual delivery of any product to Lindsay. Capstone argues that there is not any evidence of receipt by Lindsay Foods, such as the "Lindsay Foods Raw Product Receiving Report," which plaintiff admits was provided by Lindsay after the produce was received for purposes of preparing an invoice. (Doc. 119, Mike Amaral Decl. ¶4.)

Capstone has raised an issue of fact whether the produce was delivered. Documentation submitted by Amaral fails to include Lindsay's Raw Product Receiving Report tags, the report used by Lindsay for confirming receipt of raw product.[3] The Exhibit attached to the declaration of Mike Amaral includes copies of Amaral's invoices, field tags, and weight certificates. But Capstone has raised an issue of fact that Amaral acknowledges actual receipt would generate a "Raw Product Receiving Report." Mike Amaral testifies that such Receiving Reports would be sent by Lindsay: "Next, the product was shipped to Lindsay, and Lindsay would generally send us a Receiving Report confirming receipt of the product." (Doc. 119, Amaral Decl. ¶7; Doc. 123, Exh. 3.) Amaral has not included any "Raw Product Receiving Report" as part of its documentary evidence that the produce was actually received by Lindsay. Amaral argues in its reply that "although the invoices may be missing raw product receiving reports, said invoices are supported by weightmaster certificate and/or bills of lading." (Doc. 144, Reply p.5.) These documents are insufficient to carry the burden as they are not explained as to how or why these documents substitute for raw receiving reports, which are acknowledged to be provided by Lindsay as evidence of receipt. Since the Receiving Reports are not submitted, there is an inference that the produce was not delivered.

---

[3] Amaral attaches its invoices for product purportedly shipped to Lindsay. See Doc. 123 Exh. 3 (invoices 87456, 87363, 87257, 87248, 87217, 87037, 87014, 86936, 86756, 86757, 86742, and 86710)).

All reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. Accordingly, Capstone has raised an issue of fact as to whether the broccoli and cauliflower were delivered and received by Lindsay.

### (B) Failure to Carry Burden that Lindsay was a Licensed Broker or Dealer

Capstone further argues that Amaral Farms fails to prove that Lindsay was a properly licensed broker or dealer such that PACA applies to it. The only evidentiary support provided by Amaral is an unauthenticated printout from Lindsay's website. (Doc. 119, Opposition p. 10-11.)

Plaintiff must establish that Lindsay was a commission merchant, a dealer, or broker. *Country Harvest Buffet*, 245 B.R. at 653. There is no evidence that Lindsay received products on a commission basis.[4] There is no evidence that Lindsay was a dealer.[5] The declaration of George Amaral states that Amaral Ranches sold Lindsay shipments of broccoli and cauliflower. The declaration does not state in what capacity Lindsay acted. Amaral Ranches states, as an "undisputed fact," that Lindsay was a "licensed dealer under the Perishable Agricultural Commodities Act, holding License No. 20050393." (Doc. 118, Statement Undisputed facts no.1.) However, Capstone does not agree with this fact. (Doc. 137, Disputed fact no.1.)

As evidentiary support for its position, Amaral attaches an unauthenticated, one-page print out purportedly from a website with information relating to Lindsay.[6] The document contains words of "Fruits and Vegetable Programs" and "Search PACA." Amaral's reply states that the printout came from the U.S. Department of Agriculture, but the printout does not contain a complete website URL address

---

[4] A commission merchant is one who receives in interstate commerce any perishable agricultural commodity for sale on commission. 7 U.S.C. §499a(b)(6).

[5] The term "dealer" means any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity... 7 U.S.C. §499a(b)(6)

[6] Amaral's Statement of Undisputed Facts no. 1 states that the website page is authenticated by the Declaration of Paul Hart. That declaration does not contain any mention of the website printout, even if Mr. Hart could properly authenticate the website. (Doc. 118.)

10

or such identifying information.[7] There is no information about the website, or any indication on how the information in the reports was gathered or how it was prepared. Documentary evidence must be properly authenticated for use in a motion for summary judgment. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1990). Thus, the website print out is unauthenticated.

Further, the issue of admissibility of the contents of the printout, have not been established. The one page printout contains a statement offered for the truth of the matter contained therein. By the printout, Amaral seeks to establish the truth that Lindsay was a licensed dealer. Thus, it is hearsay. Fed.R.Evid. 802. Amaral argues it is a "public record," but without the proper authentication of the document, the document cannot qualify as an exception to the hearsay rule. "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181-82 (9th Cir.1988). The evidence from the printout is inadmissible.

Plaintiff has not introduced authenticated and admissible evidence that Lindsay met the requirements under PACA as a commission merchant, a dealer, or broker. Therefore, Amaral has not carried its burden of proof on this element.

### (C) Failure to Carry Burden of Interstate Commerce

Capstone argues that Amaral fails to carry its burden to show that the broccoli and cauliflower were sold in interstate commerce. Capstone argues that the evidentiary support is speculative and conclusory. The sole evidence is by Carlos Amaral, who states, "Broccoli and cauliflower are a type of commodity typically sold with the expectation that they will end their transit across state lines." Capstone argues that there is no foundation for the statement, it is hearsay, and it is a legal conclusion, among other objections.

A transaction is in "interstate commerce" if the commodities are sent from one state with the

---

[7] Federal courts consider records from government websites to be self-authenticating under Rule 902(5). See, e.g., *Estate of Gonzales v. Hickman*, 2007 WL 3237727, *2 n. 3 (C.D.Cal. May 30, 2007) (finding report issued by the Inspector General of the State of California on the Office of the Inspector General's website to be self-authentic); *Hispanic Broad. Corp. v. Educ. Media Found.*, 2003 WL 22867633, *5 n. 5 (C.D.Cal. Oct.30, 2003) (holding, "exhibits which consist of records from government websites, such as the FCC website are self-authenticating").

expectation that they will end their transit, after purchase, in another. 7 U.S.C. §499a(b)(8). Amaral argues that all it has to show is that the product sold is of the type that is typically sold in interstate commerce. (Doc. Moving paper p.15-16.)

The plaintiff does not have to prove that the produce <u>actually</u> crossed state lines. *In re Southland + Keystone*, 132 B.R. 632, 640-641 (9th Cir. BAP 1991) ("limiting coverage of the trust to transactions in which goods actually cross state lines would place a tremendous burden on the parties Congress sought to protect.") Nonetheless, the evidence must be more than conclusory statements that tracks the language of the statute. There is no foundation for the statements that " broccoli and cauliflower, like most produce, are the types of commodities that, even when sold intrastate, usually end their transit across state lines." (Carlos Amaral Decl. ¶4.) While Mr. Amaral says he has been growing and selling produce for 30 years, he does not provide the foundation upon which he can assert how that produce crosses state lines. He does not provide any statement of capacity, knowledge or expertise.

For Amaral's motion, because the burden of proof has not been carried or there is an issue of fact, the Court does not reach the issue of whether the trust extends to real property.

**4.    Capstone's Motion Against C&G Farms on the PACA Trust**

Capstone challenges C&G's claims asserting a PACA trust for the transactions involving spinach, turnips and broccoli. Capstone argues that no PACA trust was created because there was no trust *res* or delivery of the agricultural products. Capstone argues that the products of spinach and turnips were not harvested or delivered to Lindsay and therefore could not create a trust *res*. As to the broccoli stems, Capstone argues that while Lindsay ordered the broccoli stems, Lindsay refused the product before the broccoli stems were delivered because Lindsay did not have money to pay for the products. (Doc. 110, Motion p.11.)

C&G argues that physical receipt of the agricultural commodity is not a prerequisite to the creation of PACA rights. C&G argues a trust is established when produce is "wrongfully rejected." C&G argues that if the buyer, such as Lindsay, rejects the product without justification, the trust will arise from the date of rejection, at which point the product is "deemed received." (Doc. 132, Opposition p. 6-7.)

**(A)    "Received" Produce**

It is undisputed that Lindsay never physically took possession of the spinach, turnips or broccoli

from C&G. The products were either never harvested or were not delivered. The parties dispute whether Lindsay, nonetheless, "received" the goods under the terms of PACA.

One of the requirements of PACA for a trust to be created is that the dealer "receive" the product: "Perishable agricultural commodities *received* by a . . . dealer, or broker in all transactions, . . . . shall be held by such dealer, or broker in trust . . ." 7 U.S.C. §499e(c)(2) (emphasis added).

Neither party has cited any case authority for their precise proposition - whether produce is "received" without actual, physical receipt when it is rejected for the reason of financial inability to pay.[8] Neither party provides any authority as whether "deemed received" is recognized for PACA. Indeed, the Court's research has not disclosed any cases on point.

The plain language of §499e(c) requires the produce be "received." When conducting statutory interpretation, as a general rule, a court first looks at the "plain language of the statute." *Waste Action Project v. Dawn Mining Corp.*, 137 F.3d 1426, 1428 (9th Cir.1998). "Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982); *Middle Mountain Land and Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1224 (9th Cir. 2002) ("PACA protects all that is due and owing in connection with the perishable agricultural commodity transaction."). Even where the express language of a statute appears unambiguous, a court must look beyond that plain language where a literal interpretation of this language would thwart the purpose of the overall statutory scheme would lead to an absurd result, or would otherwise produce a result "demonstrably at odds with the intentions of the drafters." *Royal Foods Co., Inc. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1108 (9th Cir. 2001).

The intended purpose of Congress in enacting the trust provision of PACA was to provide unpaid produce sellers who had delivered commodities with greater protection from risk of default by buyers, by placing them ahead of other creditors in priority. *Middle Mountain Land*, 307 F.3d at 1224. Congress was particularly troubled by the practice by which produce dealers granted their lenders security interests

---

[8] Received means gaining ownership, control or possession. "'Received' means the time when the buyer, . . . gains ownership, control, or possession of the perishable agricultural commodities . . ." 7 C.F.R §46.46(a)(1). It is undisputed that Lindsay did not gain "ownership" of the produce, and that Lindsay did not gain "control" of the produce. The only issue before this Court is whether the produce was "received" in terms of "possession."

in the produce on which they had accepted delivery even though the dealers had not yet paid for these commodities. *Id.* at 1224 n.5. PACA thus was created to alleviate the,

> "burden on commerce in perishable agricultural commodities ... caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person.... This [Act] is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest."

7 U.S.C. § 499e(c)(1). Congress recognized that time constraints inherent in selling produce often required produce sellers to sell to commission merchants, dealers or brokers before ascertaining the creditworthiness of buyers. Under such circumstances, produce sellers typically became unsecured creditors of buyers, able to recover from defaulting buyers only after lenders holding security interests in defaulting buyers' assets recover in full. Often, after secured lenders collect on their security interests, no assets to pay sellers remain. To guard against such situations, Congress added § 499e(c), which enacted a statutory trust for the benefit of produce growers. *See e.g.*, *Onions Etc.*, 2010 WL 2598392. Thus, the trust provisions were enacted as a grower remedy to elevate the growers' claims above other creditors for the produce delivered.

PACA has been interpreted as providing protection upon delivery of produce. "The trust automatically arises in favor of a produce seller upon <u>delivery</u> of produce and is for the benefit of all unpaid suppliers or sellers involved in the transaction until full payment of the sums owing has been received." *In re Milton Poulos, Inc.*, 947 F.2d 1351, 1352 (9th Cir. 1991) (emphasis added), citing 7 U.S.C. §499e(c)(2). "The trust automatically arises in favor of a perishable agricultural commodities seller upon delivery of perishable agricultural commodities." *Middle Mountain Land,* 307 F.3d at 1224. It is consistent with PACA to impose a trust only when the commodity has been delivered; otherwise, the grower would be imposing a trust upon the buyer's assets which were not generated by the sale or proceeds of the grower's produce. This would defeat the purpose of PACA which is to ensure payment of the produce seller's produce in the hands of a buyer. Neither the language of PACA nor the purpose of PACA would imply imposing a trust where produce was not delivered and did not generate proceeds. Thus, for purposes of pursuing a PACA trust remedy in this case, "received" means physical receipt of the produce.

General trust principles are consistent. The Ninth Circuit applies general trust principles to questions involving the PACA trust, unless those principles directly conflict with PACA. *Boulder Fruit Exp.,* 251 F.3d at 1271. Under general trust principles, a trust cannot be created without trust property. *Restatement (Second) of Trusts* § 74 (1959). Trust property is required to create a trust. Without physical receipt of the produce,[9] the merchant, deal or broker will not obtain the trust *res*. Refusal to accept produce that has not been harvested, or where the dealer reneges on an agreement to acquire the produce does not give rise to the creation of a PACA trust. Without delivery, there is no *res* against which the trust attaches. Where there is no trust *res*, there is no creation of a PACA trust. The basic principle of trust law is that the trust requires a "*res*."

PACA does not leave a grower, who has been rejected, without a remedy. PACA provides for both a damages remedy and a trust remedy. The remedies for a PACA violation available to a grower include the creation of a trust, and also a damages remedy. See 7 U.S.C. §499e(a) (damages) and (b) (administrative complaint and common law remedies). The principal purpose of PACA is "to provide a practical remedy to small farmers and growers who were vulnerable to the sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities." *O'Day v. George Arakelian Farms, Inc.*, 536 F.2d 856, 857 -858 (9th Cir. 1976). Accordingly, certain conduct by commission merchants, dealers, or brokers is declared to be unlawful. 7 U.S.C. §499b. Unlawful conduct subjects the violator to damages. 7 U.S.C. §499e(1) ("he shall be liable to the person or persons injured thereby for the full amount of damages"). Thus, a damage remedy also is provided by PACA.

The damages remedy and the trust remedy are distinct remedies. The PACA damages provisions and the statutory trust are different statutory schemes. The PACA provisions for unlawful conduct, pursuant to § 499b, and the PACA provisions for a statutory trust, pursuant to § 499e(c)(2), are two different statutory schemes that do not apply to or interrelate to one another. *See Onions Etc, Inc. v. Z & S Fresh, Inc.*, 2010 WL 2598392, 10 (E.D.Cal. 2010) (Wanger, J.). Thus, PACA provides multiple remedies for conduct for which C&G complains.

C&G argues that the Regulations contemplate that a trust is created for a wrongful rejection of

---

[9] As stated previously, the issue before this Court is solely the physical receipt of the produce. No issue of "control" or "ownership" is presented. See 7 C.F.r. §46.46(a)(1).

produce because wrongful rejection is defined as "received." The Regulations define when a product is considered "received."

> "'Received' means the time when the buyer, . . . gains ownership, control, or possession of the perishable agricultural commodities: Provided, That when perishable agricultural commodities have not been received as described above, and *where there is a rejection without reasonable cause* as provided in § 46.2(bb) and (cc)*, the goods will be considered to have been received when proffered*."

7 C.F.R. §46.46(a)(1) (emphasis added). C&G argues this highlighted language means that when the produce is rejected without "reasonable cause," the produce is wrongfully rejected and is deemed "received." Further, C&G argues that the following highlighted language shows that Lindsay did not have reasonable cause to reject. To "reject without reasonable cause" is specifically defined:

> "(bb) Reject without reasonable cause means . . . (1) *Refusing or failing without legal justification to accept produce within a reasonable time*; (2) advising the seller, shipper, or his agent that produce, complying with contract, will not be accepted; (3) indicating an intention not to accept produce through an act or failure to act inconsistent with the contract; or (4) any rejection following an act of acceptance."[10] 7 C.F.R. §46.2(bb) (emphasis added).

C&G argues that because Lindsay "rejected without reasonable cause" which means "refusing without legal justification" to accept produce, C&G's produce was deemed "received."

The Court disagrees. This interpretation of "received," in light of the Regulations, misconstrues the plain language and the statutory purpose of PACA. The word "received" is used throughout PACA, in various different contexts, and in particular in the context of a damages remedy. 7 U.S.C.§499a-499s; §499b. For instance, it is unlawful for commission merchant, dealer, or broker to engage in or use any unfair, unreasonable, discriminatory, or deceptive practice in determining the quantity of a commodity received. Id. at 499b(a)(emphasis added). It is unlawful for a commission merchant to discard, dump, or destroy without reasonable cause, any perishable agricultural commodity received. Id. at 499b(3)(emphasis added). Whether a rejection is "without reasonable cause," i.e., wrongful rejection,

---

[10] The Regulation defines "reject without reasonable cause." It defines what is considered to be rejection without reasonable cause; the Regulation, however, does not define what is "reasonable cause." In other words, the regulation provides a list of what is unreasonable cause. The Regulation does not provide a list of what is "reasonable cause." Therefore, reasonable cause may encompass the "inability to pay." The Court, however, does not reach an interpretation because it is unnecessary to the resolution of this motion.

applies within the damages context. Indeed, establishing when produce is "received" is significant for purposes of determining damages in a fluctuating pricing market. Thus, protection against "wrongful rejection" of the produce is appropriate in a damages remedy. At that stage of procedure, the focus is on unlawful conduct. As shown above, the statutory scheme for the damages remedy and the statutory scheme for the trust remedy are distinct. Further, C&G's argument ignores the general trust principle that a trust requires a *res*.

The purpose of PACA's trust provisions is satisfied when the produce is physically received. The PACA trust is established by the physical receipt of the produce. Here, the spinach, turnips and broccoli were not delivered and received by Lindsay. Therefore, no PACA trust was established.

**(B)     Notice of the PACA Trust was Untimely**

Capstone argues notice by C&G was untimely under PACA, which would be an additional reason that the PACA trust fails. C&G argues that there is a genuine issue of fact as to whether it provided Lindsay with timely notice of intent to preserve trust rights in the spinach and turnips.

The Court does not reach the remaining issues on Capstone's motion because the Court finds that failure to deliver the produce defeats the PACA trust.

**(C)     *Res Judicata***

Capstone argues that the PACA claims is barred by *res judicata*.[11] Capstone argues that C&G filed and litigated identical claims for breach of contract and PACA violations in Monterey County. The Monterey action against Lindsay concluded in 2008 with a stipulated judgment against Lindsay. Capstone argues that the judgment now operates under *res judicata* to bar further prosecution of claims in the present action against Capstone. (Doc.110, Moving Papers p.18.)

"*Res judicata* prohibits the relitigation of claims and issues which have already been adjudicated in an earlier proceeding." *Greenspan v. LADT, LLC*, 191 Cal.App.4th 486 (2010). The prerequisite elements for applying *res judicata* to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior

---

[11] The Court reaches the issue of *res judicata* because of C&G's argument that some of the invoices have not been attacked in this motion. C&G argues that Capstone's motion is only a portion of C&G's PACA claim. *See infra*, footnote 2.

17

proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. *City of Arcadia v. State Water Resources Control Bd.*, 191 Cal.App.4th 156, 119 Cal.Rptr.3d 232, 246 (2010).

C&G argues that Capstone has failed to carry its burden on all the elements of *res judicata* and in particular, the element of "privity." C&G points out that Lindsay, in the Monterey action, is not in privity with Capstone, in this action. In fact, C&G invites Capstone to so stipulate.

Privity requires an identity of interests, or a relationship which is sufficiently close to justify application of the doctrine. *Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.*, 60 Cal.App.4th 1053, 1070, 71 Cal.Rptr.2d 77 (1998). A person who is in privity with a party to a former proceeding is bound by that proceeding only when his or her interests were adequately represented. *Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1367 (9th Cir.1985). Privity requires that the party to be estopped be "so identified in interest with another that he represents the same legal right." *Lerner v. Los Angeles City Board of Education*, 59 Cal.2d 382, 398, 29 Cal.Rptr. 657 (1963). As for privity, "[i]n the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication." *City of Arcadia v. State Water Resources Control Bd.,* 119 Cal.Rptr.3d 232, 247-248 (2010).

Capstone does not present any evidence that it is in privity with Lindsay. As evidence of the element of "privity," Capstone merely argues that "C&G is the same plaintiff as in the Monterey action and the defendants are Lindsay and, here, Capstone, <u>which C&G apparently claims to be in privity with Lindsay</u>." (Doc. 110, Moving papers p. 20) (emphasis added). Capstone offers no evidence to support its proposition that it was in privity with Lindsay such that it may take advantage of *res judicata*. Privity is not shown solely because C&G contends the parties are in privity.

Capstone has the burden of proof of *res judicata*. *Casad v. Qualls*, 70 Cal.App.3d 921, 927 (1977) (holding that burden of proof is on party asserting the defense of *res judicata*). Here, Capstone has not carried its burden that it is in privity with Lindsay.

## **CONCLUSION**

For all the foregoing reasons, the Court grants and denies the cross-motions as follows:

1. The Court GRANTS Capstone's motion for summary adjudication on the PACA violation, as provided in this order.
2. The Court DENIES the Amaral Ranches' motion for summary judgment, or in the alternative summary adjudication.

IT IS SO ORDERED.

**Dated:**   February 16, 2011            /s/ Lawrence J. O'Neill
                                         UNITED STATES DISTRICT JUDGE